Argued January 12, reversed February 1, 1921.

# GEORGES *v.* SHERIDAN & WILLAMINA R. R. CO.

(194 Pac. 1114.)

**Coroners—Witnesses—Testimony Before Coroner's Jury of One not a Witness Incompetent.**

1. In an action against a railroad for death of its brakeman, evidence before a coroner's jury, given by one not a witness in the trial court, was incompetent for any purpose; it could not be introduced or used to show the physical condition of the ground where the accident occurred, nor was it competent as tending to corroborate the testimony of another witness given on trial.

**Appeal and Error—Erroneous Admission of Incompetent Testimony not Cured by Instruction Limiting Its Use to Corroboration.**

2. In an action against a railroad for death of its brakeman, error in permitting the introduction of testimony before the coroner's jury as to the condition of the ground where the accident occurred of one not a witness in the trial court was not cured, where the court on defendant railroad's objection in effect advised and instructed the jury that it had a right to consider such testimony as tending to corroborate that of a witness on trial.

From Multnomah: HENRY E. McGINN, Judge.

Department 2.

The defendant is a corporation engaged in operating a public line of railroad in the State of Oregon.  On October 30, 1911, John Vlahos was in its employ as brakeman on one of its freight trains,

---

1.  Coroner's inquest as evidence, see note in 95 Am. St. Rep. 765.

and was killed.   The plaintiff, T. T. Georges, was duly appointed and qualified as administrator of his estate, and as such, in June, 1913, commenced this action against the defendant, to recover $7,500 on account of his death.   Among other grounds, it is alleged in the complaint that the defendant "maintained its roadbed in a dangerous condition for its operatives, and more especially the brakeman John Vlahos"; that in the discharge of his duties it was necessary for him "to dismount from the said cars with the knowledge of the engineer of said train, and while the same was moving, and to run by the side of the said cars" and enter between them to make the couplings and to run ahead of them to open or close switches; "that the defendant maintained as a way or path of working a pathway immediately by the side of the track, and * * where the said Vlahos was injured the defendant had carelessly, negligently, and recklessly dumped, or caused to be dumped, a high, long, and dangerous pile of earth or debris immediately in the center of the pathway, so that the said John Vlahos would have to run over or traverse the said pile of earth in the discharge of his duties"; that on October 30, 1911, and while Vlahos was in the discharge of his duties, it became necessary for him to run over the said mound of earth, and by reason of the same the pathway was dangerous, and he "was caused to fall or slip between and under the said cars at an accelerated speed, and in a manner whereby he could not properly care for himself by reason thereof.   That by reason of the presence of the said mound of earth, as well as the absence of automatic couplers referred to, and also the absence of automatic or air or steam brakes on said engine to control the

same, the said John Vlahos slipped and fell, and was thrown beneath and under the said train, and was caught by the wheels thereof, which ran over his body, and thereby he met his death. That the said train at the said time was traveling at a rate of speed which could not be controlled by the said engine." It is then alleged that it was not necessary to place the mound of earth in the pathway, and that it constituted, and was, a menace and danger to the employees and Vlahos in particular; that he had no knowledge of the hazards, risks, or dangers, and that his death was caused "without any fault or negligence on his part, but solely through the fault and wrong of this defendant as herein alleged."

The answer admits that defendant is a corporation as alleged; that Vlahos was in its employ as a brakeman, and that he was killed; admits that the engine and train were not equipped with air-brakes, but denies all other material allegations of the complaint, and as an affirmative defense pleads that Vlahos had been in its employ for some time and in the daily performance of such duties; that he well knew and understood all of the conditions, including the nature of the ground; that he appreciated the danger and assumed the risk, and that he "voluntarily and unnecessarily attempted to uncouple the said cars while the train was in motion."

A reply was filed. A jury trial was had, during which one Peter Banis, who was a witness to the killing of Vlahos, testified on the part of the plaintiff:

"That there was a mound of earth beside the track at the place where the accident occurred, over which the said John Vlahos stumbled and thereby met his death."

At the time of the accident a coroner's inquest was held, and Banis was there a witness. The record of the inquest shows that he there testified:

"Q. Was the ground smooth where this occurred?
"A. The ground was level all right."

To contradict his evidence at the trial, the defendant offered in evidence a transcript of his testimony taken at the inquest, which contained the above question and answer. "Plaintiff then demanded that all the testimony taken at said inquest, including all the testimony of witnesses other than said Peter Banis, and including all the testimony of the witnesses examined at the inquest and so transcribed as aforesaid, should be introduced in evidence," and it was all admitted over the objections of the defendant that it was incompetent, irrelevant, and immaterial, "except so much thereof as was competent for the purpose of contradicting the witness Peter Banis, and especially the testimony of other witnesses was incompetent, irrelevant, and immaterial as being hearsay and declarations of persons not deceased, and was prejudicial to the defendant, and tended to support the contention of plaintiff and to defeat the contention of defendant." An exception to this ruling was allowed. It appears that George Gones was a witness at the coroner's inquest, and that he there testified:

"Q. What was the condition of the track around where he was killed?
"A. It was rough, and the wheel caught one foot.
"Q. Why do you think he got in there?
"A. He could not pull up the coupling. His feet slipped on the bank of dirt."

Although Gones was not a witness at the trial in the Circuit Court, the above questions and his an-

swers thereto were read to the jury over defendant's objection.

It is stated in the bill of exceptions that—

"The question whether deceased slipped and fell on a bank or mound of earth was an essential and important question in the case and the alleged leaving of the mound of earth in that place was the principal ground of negligence relied upon by the plaintiff."

It further appears that:

"There was other testimony introduced than the testimony of Peter Banis and George Gones which tended to prove that the ground along the side of the track where the accident occurred was rough, which testimony was contradicted by testimony on behalf of the defendant."

The trial lasted about three days. Some time after the admission of the coroner's record, the court addressed the jury as follows:

"About that inquest I ought to say a word. I permitted it in evidence, gentlemen, for one purpose, and for one purpose only, and it is only to be considered by you for one purpose. You will remember that one of the witnesses was questioned when on the stand about what was said before the coroner's jury, and he gave certain answers. Counsel for the defendant undertook to produce the coroner's testimony, and will undoubtedly claim to you that it was not consistent with the testimony which he gave before the coroner's jury. I admitted it for the purpose of allowing counsel to contend before you, if he so desired, and for you to believe, if you thought the testimony was so, that he did testify in a manner different; but, inasmuch as his contention was that he may not have said so, or did not understand it, I thought it best to allow the entire proceedings of the coroner's jury to go before you. It is before you for the one purpose and for the one purpose, only, of determining whether there was testimony given by the witness at that investigation which was contrary to the testi-

mony which he gave here. The testimony given before the coroner's jury is not testimony in this case. You take the testimony in this case, and you rely upon that. The testimony given in that case and not given here is not to be considered by you, only in so far as you think it may throw light upon the question as to whether this witness testified at this time differently than the way he testified before the coroner. That is the only thing it is in the case for.''

The court instructed the jury, in part, as follows:

''I told you when I last spoke to you upon this subject that the coroner's inquest and the testimony that was taken before the coroner's inquest was allowed to go to you because of the testimony of the witness who was asked certain questions about what he testified to before the coroner's jury. It was claimed that what he said there was contradictory to what he said here. He tried to, or qualified his statements by saying many things, and I thought it better to let the entire testimony go to you and let you determine whether or not, taking into consideration all that was said and the way in which it was said, whether or not he contradicted himself at this time. But that testimony was received for that purpose and for that purpose only. It has no other purpose in this case. If it does not throw light, or if it does throw light, upon whether the witness contradicted himself, it is to be received by you, but the testimony of negligence is before you in this case, and you must take the negligence as it is presented in this case, and not in the way that it was presented before the coroner. The only office, the only place that this testimony can have is upon the question as to whether the witness contradicted himself at this time in the testimony that he gave there, and that is the only way that you are to consider it.''

The jury returned a verdict in favor of plaintiff for $2,150, upon which judgment was entered, and from which defendant appeals, claiming:

"That the court erred in admitting the testimony of the witness George Tilbury as to the testimony of witnesses at the coroner's inquest and the written transcript of all of said testimony at the coroner's inquest, and erred in overruling the objections of the appellant to the same, and especially to all thereof except so much as was competent for the purpose of contradicting the witness Peter Banis, and in admitting the testimony of other witnesses than Peter Banis, and in overruling the objections of the appellant to the latter—all of which errors are more fully shown by the bill of exceptions."

REVERSED.

For appellant there was a brief over the names of *Mr. Ben C. Dey, Messrs. Wood, Montague & Hunt, Mr. Ralph E. Moody* and *Mr. Donald M. Graham,* with an oral argument by *Mr. Dey.*

For respondent there was a brief over the names of *Messrs. Malarkey, Seabrook & Dibble, Mr. Walter Hayes* and *Messrs. Logan & Smith,* with an oral argument by *Mr. E. B. Seabrook.*

JOHNS, J.—In his brief, respondent says:

"As evidence tending to prove any issue in this case we do not contend that George Gones' testimony was competent. But as a part of a record offered to impeach Banis we contended it should go to the jury so they could determine from all that transpired before the coroner's jury whether Peter Banis by testifying, 'The ground was level all right,' contradicted the testimony he gave on this trial. It might well be, as we contended, that, in the light of the whole record before the coroner's jury, the surrounding ground was level in a general sense, and yet there be a pile of dirt at the particular place where the accident occurred.

"However that may be, the court admitted the whole record for the limited purpose of the impeach-

ment of Banis, and in order that the jury might determine whether Banis contradicted himself on the two occasions.

"If it was error to admit this record, and we readily concede it was if admitted as tending to prove any issue made by the pleadings, the question to be determined here, as counsel suggest in their brief, is whether such error was prejudicial to defendant when the court expressly limited the jury's consideration thereof to the impeachment of Banis and expressly instructed the jury to disregard it for any other purpose."

1, 2. The proceeding before the coroner's jury was an *ex parte* investigation by the state, to which the defendant was not a party and by which it was not bound. The offer of the defendant was limited to the testimony of Peter Banis, and was for the purpose of showing that he had testified one way at the coroner's inquest and another at the trial, and it was not offered for any other or different purpose. It was in the nature of an impeachment of his evidence. As shown by the bill of exceptions, the physical condition of the ground, and as to whether "the deceased slipped and fell on a bank or mound of earth," was an essential and important question in the case, and was "the principal ground of negligence relied upon by the plaintiff." Gones was an eye-witness to the accident and he testified before the coroner's jury that the ground was "rough," and "his feet slipped on a bank of dirt." Gones was not a witness in the Circuit Court, and his evidence before the coroner's jury was incompetent for any purpose in the trial of this case. The condition of the ground where the accident happened was an important fact, which should have been tried and determined from competent testimony, as any other

fact in the trial of a case. The evidence of the witnesses before the coroner's jury could not be introduced or used for the purpose of showing the physical condition of the ground; or that there was a bank or mound of earth; or that "it was rough"; or that "his feet slipped on a bank of dirt." Respondent concedes that its admission was error, but claims that the evidence was withdrawn, and that the error was cured by the remarks and instructions to the jury above quoted. In its remarks to the jury, the court said that:

"Inasmuch as his contention was that he may not have said so, or did not understand it, I thought it best to allow the entire proceedings of the coroner's jury to go before you"

—and that he admitted it for the sole purpose "of determining whether there was testimony given by the witness at that investigation which was contrary to the testimony which he gave here. The testimony given in that case and not given here is not to be considered by you only in so far as you think it may throw light upon the question as to whether this witness testified at this time differently than the way he testified before the coroner. That is the only thing it is in the case for." In other words, because Banis testified one way before the coroner's jury and another at the trial, and was then claiming "that he may not have said so, or did not understand it," the testimony of Gones that the ground was "rough," and that "his feet slipped on a bank of dirt," was permitted to stand for the purpose of corroborating the testimony of Banis given at the trial. The question as to whether there was a bank or mound of earth was the important issue at the trial, and, under the rules of evidence, should have been proved as

any other fact.   Upon that point, the testimony of Gones before the coroner's jury was incompetent for any purpose.   It was given in a proceeding to which the defendant was not a party.   Neither was it competent as tending to corroborate the testimony of the witness Banis given at the trial, yet it was permitted to stand and to be considered by the jury for that very purpose.   We do not know of any rule of law by which the testimony of one witness given at a trial can be corroborated by the evidence of another and a different witness given at a coroner's inquest in and to which the defendant in the action is not a party.   In its charge, the court says:

"It is claimed that what he said there was contradictory to what he said here.   He tried to, or qualified his statements by saying many things, and I thought it better to let the entire testimony go to you and let you determine whether or not, taking into consideration all that was said and the way in which it was said, whether or not he contradicted himself at this time."

Here, again, the jury was told that it might consider the testimony of Gones at the coroner's inquest for the purpose of corroborating the evidence of Banis given at the trial.

Respondent relies upon *State* v. *Aiken*, 41 Or. 294;. 299 (69 Pac. 683, 685), in which this court says:

"A sharp conflict of judicial utterance is to be found in respect to whether an error committed by admitting incompetent testimony is cured by withdrawing it: 1 Thompson, Trials, § 723.   Whatever the rule may be in other states, it is quite well settled in this that an error committed by inadvertently admitting improper testimony is cured by specifically withdrawing it."

The opinion also holds that:

"The admission of incompetent prejudicial testimony influences the minds of jurors, and, in order to remove the impressions thus created, the direction of the court not to consider such testimony must be so specific that the jurors cannot possibly mistake the instruction."

That case was reversed for the failure to give such specific instructions.

In the instant case the testimony of Gones as a witness at the coroner's inquest was introduced at the trial, and, in effect, the jury was advised and instructed that it had a right to consider that testimony as tending to corroborate the evidence of Banis at the trial. It never was admissible for any purpose. It was permitted to remain in the record for a limited and defined purpose. There was no specific withdrawal of the incompetent testimony within the meaning of *State* v. *Aiken*, 41 Or. 294, 299 (69 Pac. 683, 685). Assuming that the error could have been cured, the evidence should have been withdrawn for all purposes, and the jury should have been specifically instructed that it had no right to consider it for any purpose.

Upon the facts in the record, the admission of Gones' testimony was prejudicial error, which was not cured by the remarks or instructions of the court. The judgment is reversed.                REVERSED.

BURNETT, C. J., and McBRIDE and BEAN, JJ., concur.